Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

# UNITED STATES DISTRICT COURT

for the

Southern District of Georgia

_____ Division

2017 AUG 17 P 4: 21

CLERK_____
SO. DIST. OF GA.

Stephanie D. Moore

Plaintiff(s)
(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

East Georgia Regional Medical Center

Defendant(s)
(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

Case No. **CV117-099**

(to be filled in by the Clerk's Office)

Jury Trial: (check one) ☒Yes ☐No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name                Stephanie D. Moore
Street Address      623 Clarkplace Road
City and County     Waynesboro    Burke
State and Zip Code  Georgia    30830
Telephone Number    706 945 4784
E-mail Address      smoore0985@gmail.com

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

East Georgia Regional Medical Center

1499 Fair Road

Statesboro,      Bulloch

Georgia          30459

(912) 484 - 1000

Defendant No. 2

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Stacey Hammock

Nurse Supervisor

1499 Fair Road

Statesboro,   Bulloch

Georgia     30459

(912) 486 - 1000

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Mike Black

Human Resource Director

1499 Fair Road

Statesboro,   Bulloch

Georgia     30459

(912) 486 - 1000

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | East Georgia Regional Medical Center |
| Street Address | 1499 Fair Road |
| City and County | Statesboro  —  Bulloch |
| State and Zip Code | Georgia          30459 |
| Telephone Number | (912) 486-1000 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒    Other federal law *(specify the federal law)*: Pregnancy Discrimination Act of 1978
42 U.S.C § 2000e (k) (1978), Section 60-20.5(b)(5)

☐    Relevant state law *(specify, if known)*: _____

☐    Relevant city or county law *(specify, if known)*: _____

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes (check all that apply):

☐  Failure to hire me.

☐  Termination of my employment.

☐  Failure to promote me.

☒  Failure to accommodate my disability.

☒  Unequal terms and conditions of my employment.

☐  Retaliation.

☒  Other acts (specify): Denied Pregnancy Light Duty Request
(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

_____

C.    I believe that defendant(s) (check one):

☐  is/are still committing these acts against me.

☒  is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my (check all that apply and explain):

☐  race          _____

☐  color         _____

☒  gender/sex    Pregnant Female

☐  religion      _____

☐  national origin  _____

☐  age (year of birth) _____ (only when asserting a claim of age discrimination.)

☒  disability or perceived disability (specify disability)

     Pregnancy

E.    The facts of my case are as follows. Attach additional pages if needed.

Page 4 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*  May 23, 2017.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____

Signature of Plaintiff

Printed Name of Plaintiff _____Stephanie D. Moore_____

### B. For Attorneys

Date of signing: _____

Signature of Attorney

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

UNITED STATES OF District Court
For the Southern District of Georgia

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2017 AUG 17 P 4: 22

CLERK
SO. DIST. OF GA.

|  |  |  |
|---|---|---|
| STEPHANIE MOORE, | ) | |
| Plaintiff | ) | |
| v. | ) | Agency Case No. CV117-099 |
| | ) | |
| EAST GEORGIA REGIONAL MEDICAL CENTER, | ) | |
| STACEY HAMMOCK-HODGES, MIKE BLACK AND | ) | |
| OTHER AGENCY DESIGNEE, | ) | |
| Respondent | ) | |
| | ) | |

PLAINTIFFS' COMPLAINT AND DEMAND FOR JUDGEMENT

1.

In the above referenced and in accordance with 29 C.F.R. § 1614.106, Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended, as it appears in volume 42 of the United States Code. The following is the text of Titles I and V of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles will appear in volume 42 of the United States Code, beginning at section 12101. Title I of the ADA, which became effective for employers with 25 or more employees on July 26, 1992, prohibits employment discrimination against qualified individuals with disabilities. Since July 26, 1994, Title I has applied to employers with 15 or more employees. Title V contains miscellaneous provisions which apply to EEOC's enforcement of Title I.

2

The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) amended sections 101(4), 102 and 509 of the ADA. In addition, section 102 of the amended the statutes by adding a new section following section 1977 (42 U.S.C. 1981) to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the ADA, and section 501 of the Rehabilitation Act of 1973 (Rehab Act). The Americans with Disabilities Act Amendments Act of 2008 (Pub. L. 110-325) (ADAAA) amended sections 12101, 12102, 12111 to 12114, 12201

[1]

and 12210 of the ADA and section 705 of the Rehab Act. The ADAAA also enacted sections 12103 and 12205a and redesignated sections 12206 to 12213.

### 3

The Pregnancy Discrimination Act (PDA) is an amendment to Title VII of the Civil Rights Act of 1964. Discrimination on the basis of pregnancy, childbirth, or related medical conditions constitutes unlawful sex discrimination under Title VII.

### 4

Plaintiff claims that she was discriminated against under the Pregnancy Discrimination Act (PDA) while employed by the Respondent as a pregnant employee that was denied light duty and reasonable accommodations, as required by the Act when an employee is pregnant and request light duty or reasonable accommodations. The Plaintiff claims that she had been discriminated against on the basis of her sex (female - pregnancy) when she was denied light duty for her pregnancy-related restrictions.

### 5

To support a claim of discrimination based on Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq, Pregnancy Discrimination Act of 1978, Americans with Disabilities Act Amendment Act of 2008 and other related laws and regulations state that the Plaintiff must show:

(1) She was a member of a protected class; (2) she was subject to adverse employment actions; (3) she was a qualified employee and (4) she treated worse than others.

(2) The Plaintiff must also show through a preponderance of evidence that the Respondent response to her with the knowledge that she was pregnant and her request for light duty and reasonable accommodations were discriminatory.

### 6

The Plaintiff believes the appealable issues before the Court are:

a. Whether the Respondent denied the Plaintiff her rights under the Americans with Disabilities Act Amendments Act of 2008, (ADAAA) amended sections 12101, 12102, 12111 to 12114, 12201 and 12210 of the ADA.

[2]

b.   Whether the Respondent denied accommodations or light duty after repeated requests by the Plaintiff, based on her disability as a full-time pregnant employee.

c.   Whether the Plaintiff was discriminated against when the Respondent refused or denied her continued employment after receiving notice from her physician that the Plaintiff required light duty because a medical disability condition warranted accommodations.

d.   Whether the Respondent applied the proper and correct legal standards that would have afforded the Plaintiff the right to continue employment as a pregnant  employee that repeatedly requested light duty and reasonable accommodation to the full intent of the Pregnancy Discrimination Act (PDA) as an amendment to Title VII of the Civil Rights Act of 1964, and EEO laws set forth in 29 CFR 1614,  Title VII of the Civil Rights Act of 1964, U.S.C Title 5, Code of Federal Regulations Administrative Personnel, 5.U.S. C §7702,  and other applicable laws and regulations to allow Plaintiff an opportunity to continue employment as a pregnant, female employee.

7
BACKGROUND

Plaintiff is an African American female, who was employed as a certified nurse assistant (CNA) at the East Georgia Regional Medical Center in Statesboro, Georgia from December 18, 2014, through April 12, 2016.  The Plaintiff became pregnant during her employment at the Center. The Plaintiff's job assignment included the care of debilitating, disabled, and total care patients that required frequent lifting, turning, pushing, and pulling patients for toileting and bowel programs, care of bed sores and standard protocols for prevention of bed sores by positioning of bed bound patients every two hours during a twelve hour shift.  Plaintiff's job also required prolonged standing during most of her shift.  Plaintiff's job required her to work twelve-hour shifts for three to four days a week.  In an email to her supervisor, Stacey Hammock, dated November 16, 2015, the Plaintiff requested light duty and reasonable accommodations because of her pregnancy (*See document C-5-E1*).  The Plaintiff requested to work "as needed" (PRN) or be reassigned to a clerical position that she had been cross-trained to do.  Respondent denied her request for "light duty" on November 18, 2015 through text correspondence (*See document C-1-A2*).  After being denied light duty, the Plaintiff on or about December 05, 2015, applied for FMLA (continuous and

[3]

intermittent) *(See document C-4-01).* Shortly after, on December 14, 2015, Ms. Hammock, the Plaintiff's supervisor informed her that the Respondent denied her request for FMLA. Ms. Hammock also stated that the Plaintiff would need to request a personal leave absence and that her job would not necessarily be protected *(See document C-4-4).* The Respondent claimed that her FMLA was denied because the Plaintiff had not been employed with the company for one year. The Plaintiff responded that her requested FMLA start date would be in January 2016 and at that time she would have been employed for more than twelve months *(See document C-4-4).*

8

Repeatedly, the Plaintiff requested "light duty" because of her temporarily disabling condition. On December 24, 2015, the Plaintiff's physician, Dr. Raphael Jordan provided the Plaintiff with a "pregnancy work guideline" order *(See document C-2-B1).* The guidelines restricted the Plaintiff from prolonged standing, heavy lifting greater than twenty pounds, and restricted her to an 8-hour workday. On December 28, 2015, the Plaintiff submitted her physician pregnancy work guideline orders to the Respondent *(See document C-2-B1).* Later that same day, the Plaintiff's supervisor acknowledged receipt of those guidelines by sending her a text message that stated that the Respondent had refused her request for accommodations and told her to apply for FMLA *(See document C-2-B2).* Subsequently, on January 13, 2016, the Plaintiff's supervisor then forced the Plaintiff off of the shift schedule via text message and stated that she would no longer allow her to work until she was able to work twelve hours shifts *(See document C-3-C1).* On January 21, 2016, after learning that the Respondent had not complied with his December 28, 2015, pregnant work guideline, Plaintiff's doctor faxed to Respondent a second light duty order, he stated: "Stephanie is not able to work a Twelve (12) hour shift. Due to ongoing problems with lower back pain and lower abdominal/pain, she has been advised against any pushing/pulling type of duties. I have advised Stephanie to begin maternity leave of absence from her normal work duties as of 01/21/2016" *(See document C-3-C3)."*

9

Based on the Respondent's actions of not accommodating her with light duty work and then removing her from the work schedule while she was pregnant, Plaintiff having no confidence that the Respondent would accommodate her while she was recovering from childbirth, the Plaintiff was forced to resign on April 12, 2016.

[4]

10

On January 25, 2016, and after Plaintiff was discharged on January 13, 2016 for not being able to work a twelve hour-shift while she was pregnant, she filed a complaint with the Equal Employment Opportunity Commission (EEOC) claiming employment discrimination as a pregnant employee.   On May 23, 2016, Plaintiff received "Notice of Suit Rights" from the EEOC, stamp dated May 19, 2017 *(See document C-5-E1)*.

11

## APPLICABLE LAWS

Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e (k) (1978) Under the Pregnancy Discrimination Act of 1978, which amended Title VII of the Civil Rights Act of 1964, employment discrimination on the basis of pregnancy, childbirth, or related medical conditions constitutes unlawful sex discrimination.

12

A claim of disparate treatment is examined under the three-part analysis first enunciated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  For Plaintiff to prevail, she must first establish a prima facie case of discrimination by presenting facts that, if unexplained, Reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. See McDonnell Douglas, 411 U.S. at 802; Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978).

13

Section 60-20.5(b)(5) states it is unlawful pregnancy discrimination if a contractor were to deny accommodations to a pregnant employee who is temporarily unable to perform some of her job duties because of pregnancy when such accommodations are provided o other employees whose abilities or inabilities to perform their job duties are similarly affected.

[5]

14

Section703. (a) Of Title VII of the Civil Rights Act of 1964: Equal Employment Opportunity states that it is unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

(b) It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

15
ACCORDING TO EEOC GUIDELINES

Pregnancy and Maternity Leave:

An employer may not single out pregnancy related conditions for medical clearance procedures that are not required of employees who are similar in their ability or inability to work. For example, if an employer requires its employees to submit a doctor's statement concerning their inability to work before granting leave or paying sick benefits, the employer may require employees affected by pregnancy related conditions to do the same.

Pregnant employees must be permitted to work as long as they are able to perform their jobs. If an employee has been absent from work as a result of a pregnancy related condition and recovers, her employer may not require her to remain on leave until the baby's birth. Nor may an employer have a rule that prohibits an employee from returning to work for a predetermined length of time after childbirth. Under the PDA, an employer that allows temporarily disabled employees to take disability leave or leave without pay must allow an employee who is temporarily disabled due to pregnancy to do the same. Employers must hold open a job for a

[6]

pregnancy related absence the same length of time that jobs are held open for employees on sick or temporary disability leave.

16

Further, under the Family and Medical Leave Act (FMLA) of 1993, enforced by the U.S. Department of Labor, a new parent (including foster and adoptive parents) may be eligible for 12 weeks of leave (unpaid, or paid if the employee has earned or accrued it) that may be used for care of the new child. To be eligible, the employee must have worked for the employer for 12 months prior to taking the leave and the employer must have a specified number of employees. For more information please see: www.dol.gov/whd/regs/compliance/whdfs28.htm.

17

Pregnancy and Temporary Disability:

If an employee is temporarily unable to perform her job due to pregnancy, the employer must treat her the same as any other temporarily disabled employee; for example, by providing light duty, modified tasks, alternative assignments, disability leave, or leave without pay.

18

Additionally, impairments resulting from pregnancy (for example, gestational diabetes) may be disabilities under the Americans with Disabilities Act (ADA). An employer may have to provide a reasonable accommodation for a disability related to pregnancy, absent undue hardship (significant difficulty or expense). For example, an employer may be required to provide modified duties for an employee with a 20-pound lifting restriction stemming from pregnancy related sciatica, absent undue hardship. The ADA Amendments Act of 2008 makes it much easier to show that a medical condition is a covered disability. For more information about the ADA, see www.eeoc.gov/laws/types/disability.cfm. For information about the ADA Amendments Act, see www.eeoc.gov/laws/types/disability_regulations.cfm.
Equal Access to Benefits

19

If an employer provides any benefits to workers on medical leave, the employer must provide the same benefits for those on medical leave for pregnancy related conditions. Employees with pregnancy related disabilities must be treated the same as other temporarily disabled employees for accrual and crediting of seniority, vacation calculation, pay increases, and temporary disability benefits.

[7]

20

## REASONABLE ACCOMMODATION:

The duty to provide reasonable accommodation is a fundamental statutory requirement because of the nature of discrimination faced by individuals with disabilities. Although many individuals with disabilities can apply for and perform jobs without any reasonable accommodations, there are workplace barriers that keep others from performing jobs which they could do with some form of accommodation. These barriers may be physical obstacles (such as inaccessible facilities or equipment), or they may be procedures or rules (such as rules concerning when work is performed, when breaks are taken, or how essential or marginal functions are performed). Reasonable accommodation removes workplace barriers for individuals with disabilities.

21

Reasonable accommodation is available to qualified applicants and employees with disabilities. Reasonable accommodations must be provided to qualified employees regardless of whether they work part- time or full-time, or are considered "probationary." Generally, the individual with a disability must inform the employer that an accommodation is needed

22

There are a number of possible reasonable accommodations that an employer may have to provide in connection with modifications to the work environment or adjustments in how and when a job is performed. These include:

- job restructuring;
- part-time or modified work schedules;
- reassignment to a vacant position, etc.

[8]

23

A modification or adjustment is "reasonable" if it "seems reasonable on its face, i.e., ordinarily or in the run of cases;" this means it is "reasonable" if it appears to be "feasible" or "plausible."An accommodation also must be effective in meeting the needs of the individual. In the context of job performance, this means that a reasonable accommodation enables the individual to perform the essential functions of the position. Similarly, a reasonable accommodation enables an applicant with a disability to have an equal opportunity to participate in the application process and to be considered for a job. Finally, a reasonable accommodation allows an employee with a disability an equal opportunity to enjoy the benefits and privileges of employment that employees without disabilities enjoy.

24

## LIGHT DUTY

The term "light duty" has a number of different meanings in the employment setting. Generally, "light duty" refers to temporary or permanent work that is physically or mentally less demanding than normal job duties.  Some employers use the term "light duty" to mean simply excusing an employee from performing those job functions that s/he is unable to perform because of an\ impairment.  "Light duty" also may consist of particular positions with duties that are less physically or mentally demanding created specifically for the purpose of providing alternative work for employees who are unable to perform some or all of their normal duties. Further, an employer may refer to any position that is sedentary or is less physically or mentally demanding as "light duty."

25

## APPLICABLE CASES

*Latowski v. Northwoods Nursing Center*, 549 Fed. Appx. 478 (6th Cir. 2013).  When a nursing home learned one of its nursing assistants, Jennifer Latowski, was pregnant, it required her to provide a doctor's note stating she had no work restrictions.  Ms. Latowski could not produce such a note, and the company later terminated her.  The EEOC participated as *amicus curiae* (a "friend of the court") on appeal and argued that a jury could find the defendant used its "no

[9]

restrictions" policy as a pretext for discriminating on the basis of pregnancy against the plaintiff. The U.S. Court of Appeals for the Sixth Circuit agreed with the EEOC and reversed the district court's entry of summary judgment on Ms. Latowski's pregnancy-discrimination claim.

26

*EEOC v. Step Three, Ltd.* (D. Haw. No. 1:13-cv-00674) (*resolved* 12/13/2013). The Commission sued Step Three under Title VII and the Americans with Disabilities Act to seek relief for a female retail buyer who worked for the company in Honolulu. The employee informed the defendant that she had begun treatments for infertility. According to the Commission's suit, a company official responded with offensive comments regarding her disability. The EEOC alleged that later that year, when the employee revealed that she was pregnant and had related travel restrictions, the defendant fired her. Step Three agreed to a two-year consent decree to resolve the suit. The decree included $60,000 in monetary relief, as well provisions requiring it to: hire a consultant to ensure compliance with Title VII and the ADA; revise its anti-discrimination policies and procedures; and provide annual training for staff.

27

*Young v. United Parcel Service, Inc.* Peggy Young worked as a driver for United Parcel Service, Inc. (UPS). After becoming pregnant, her doctor advised she should not lift more than 20 pounds. This was a problem for Young since she was required to be able to lift up to 70 pounds as a part of her job duties for UPS. Young asked for a light duty position, but UPS refused. UPS provided light duty positions for certain workers, such as those injured on the job or who suffered from a disability recognized by the Americans with Disabilities Act; it did not make such accommodations for those who were pregnant.

28

**RESPONDENT RESPONSE**

On June 1, 2016, the Respondent responded to the Plaintiff's EEOC complaint, claiming that the Plaintiff requested to maintain working her regular twelve hour shift. The Respondent further states: "Charging Party only worked six shifts over a two week period before applying for and receiving continuous FMLA leave. She never provided the medical center the second physician's note before going out on her leave. Charging Party claims she was discriminated

[10]

against because of her sex. This is not true.  Charging Party requested and was allowed to continue working her regular scheduled shifts." *(See document C-6-A1 and A2)*

29

## CLAIM ANALYSIS

According to the evidence provided from email and text correspondences between the Plaintiff and her supervisor, it is established that the following are undisputed facts.  (1) On November 16, 2015, Plaintiff informed her supervisor she was getting further into her pregnancy and requested a "light duty" assignment due to complications arising from her pregnancy, but was subsequently denied by her supervisor *(See document(s) C-1-A1, A2)*.  (2) On December 28, 2015, the Plaintiff presented her supervisor with written instructions from her obstetrician dated December 24, 2015  that restricted her from working a twelve hour shift and limited her to  work  an eight hour shift, provided that there was no prolonged standing, and no heavy lifting  more than twenty pounds *(See document C-2-B1)*.  (3) After receiving these orders from the Plaintiff's obstetrician (Dr. Raphael Jordan), the Respondent still did not place her on a light duty assignment *(See document C-2-B1)*.  As a result of the Plaintiff's obstetrician providing the Respondent with the pregnancy work guidelines on December 28, 2015, thereafter, on January 13, 2016, the Plaintiff was discharged or removed from the Respondent's work schedule because of her temporary disabling pregnant condition. The removal came in spite of receiving a medical qualified opinion from her obstetrician, excusing her of from working a twelve-hour shift. *(See document C-3-C1)*. (4) Based on the Respondent's treatment while she was on the job pregnant (refusing her "light duty") after repeated requests and after having full knowledge of her obstetrician's orders, the Plaintiff was forced to resign on April 12, 2016, during her child bearing recovery period

30

Under the Pregnancy Discrimination Act of 1978 (PDA), 42 U.S.C. § 2000e (k), a woman affected by pregnancy, childbirth or related conditions must be treated the same for all employment related purposes as other persons not so affected, but similar in their ability or inability to work. Accordingly, a person who is pregnant who seeks light duty must be treated in a like manner to all others who are afforded light duty and given neither greater or less consideration with respect to their rights to light duty.

[11]

**CONCLUSION**

Based on the factual evidence and the laws that is pertinent in this case, there is sufficient evidence that a reasonable person having a understanding of the guiding laws and complete knowledge of the factual evidence, would conclude that the Respondent violated the Pregnancy Discrimination Act of 1978 (PDA and Title VII of the Civil Rights Act of 1964, based on sex discrimination.

According to the evidence stated by the Plaintiff and bared out by email and text correspondences between the Plaintiff and her supervisor, she was subjected to adverse employment actions, which included refusing her light duty. Light duty was requested by the Plaintiff, thus her physician wrote two light duty requests due to his professional opinion that the Plaintiff's pregnancy warranted restricted working conditions.

The Plaintiff was hired as a certified nursing assistant (CNA) and she has held her CNA licenses' in good standing for more than ten years. The Plaintiff was and still remains qualified for the position.  She was pregnant and employed with the Respondent. The Plaintiff's qualifications were never in dispute.

The Plaintiff recalls the Respondent had at least one employee, Brittney Smith, who after injuring her arm, was placed on light duty until she recovered.  The Plaintiff was aware of other similar cases where other employees received light duty assignments.  However, she had limited resources in obtaining employment records.

The Respondent violated the Pregnancy Discrimination Act (PDA), after the Plaintiff requested a light duty assignment, but was denied.  Even after having had received two pregnancy work guideline restrictions from the Plaintiff's physician; also and when the Respondent arbitrarily removed her from the work schedule on January 13, 2016 because she was not able to work her regular twelve-hour shift due to her pregnancy, while having the knowledge that she had not been

[12]

approved for FMLA at that time; the Respondent violated the Pregnancy Act. Therefore, there is overwhelming evidence through email and text correspondences that displays the Respondent's intent to discriminate because the Plaintiff was pregnant.

36

As Plaintiff, I prays that her case will be processed in terms of the guiding laws; judged impartially; that such judgment be entered in favor of Plaintiff and against Respondent in an amount in excess of $10,000.00 in damages for the physical pain and suffering endured, punitive damages; that all costs be taxed against the Respondents, jointly and severally; and for such other and further relief as the Court deems appropriate under the facts and circumstances of this case.

Submitted this 17th day of August, 2017.

Stephanie Moore, Pro Se Plaintiff
Address 623 Clark Place Rd,
Waynesboro, GA 30830
Phone (706) 945-4784
Email: smoore0985@gmail.com

[13]

## CERTIFICATE OF SERVICE

I hereby certify that I have submitted the Plaintiff complaint to Respondent and the U.S. District Court for the Southern District of Georgia by U.S. Postal Service certified mail:

(1) Peter A. Malanchuk, Employment Counsel
East Georgia Regional Medical Center
1499 Fair Road
Statesboro, Georgia 30459

(2) Assistant United States Attorney
District Court for the Southern District of Georgia
P.O. Box 2017
Augusta, Ga 30903

Date: August 17, 2017

Stephanie D. Moore, Pro Se Plaintiff,

Mailing Address: 623 Clark Place Road
Waynesboro, Ga. 30830

[14]

 **Gmail**                            **Stephanie Moore <smoore0985@gmail.com>**

## Job
6 messages

**Stephanie Moore** <smoore0985@gmail.com>               Mon, Nov 16, 2015 at 12:07 PM
To: Stacey Hammock <staceyrayne@ymail.com>

Hey Stacey,

I was wondering being that I am getting further along in my pregnancy and it's getting harder for me to turn patients by myself and still not always getting the help I need on the floor, could I go prn or train some more on unit clerking again just until I have my baby? It would be a great help on my legs and my back...I try hard to perform the job to the best my ability, but a lot of time, there is still not sufficient help. I just want to make sure everything goes smoothly until I have my baby and that I can continue to work, if it's that feasible with the company?

Thanks Stephanie Moore

On Nov 13, 2015 11:37 AM, "Stacey Hammock" <staceyrayne@ymail.com> wrote:

---

**Stacey Hammock** <staceyrayne@ymail.com>               Mon, Nov 16, 2015 at 12:25 PM
To: Stephanie Moore <smoore0985@gmail.com>

I will have to ask HR what to do in this situation. I'll let you know what they say.

Sent from my iPhone
[Quoted text hidden]

---

**Stephanie Moore** <smoore0985@gmail.com>               Fri, Jan 15, 2016 at 11:08 AM
To: mariagump01@gmail.com

[Quoted text hidden]

---

**Stephanie Moore** <smoore0985@gmail.com>               Thu, Jan 21, 2016 at 4:04 PM
To: ~~████████████████████~~

---------- Forwarded message ----------
From: "Stephanie Moore" <smoore0985@gmail.com>
Date: Nov 16, 2015 12:07 PM
Subject: Job
To: "Stacey Hammock" <staceyrayne@ymail.com>
[Quoted text hidden]

---

**Stephanie Moore** <smoore0985@gmail.com>               Mon, Jan 25, 2016 at 12:55 PM
To: mooremaria4738@yahoo.com

[Quoted text hidden]

---

**Stephanie Moore** <smoore0985@gmail.com>               Tue, Aug 1, 2017 at 3:39 PM
To: ~~████████████~~

---------- Forwarded message ----------
From: **Stephanie Moore** <smoore0985@gmail.com>
Date: Mon, Nov 16, 2015 at 12:07 PM
Subject: Job
To: Stacey Hammock <staceyrayne@ymail.com>

*C-1-A0*
*Compl*

Screenshot_2016-01-26-10-09-13.png

**Response to 11/16/15 email.**

🔵 🕐 📶 4G 54% 🔋 10:09

tacey Hammock    📞    🗑

(912) 601-7486

Wed, 11/18/2015



Stephanie-I talked to HR about what you mentioned to me. You will have to apply for leave if you can't perform your job duties and they will send the paperwork to the doctor to fill out.

09:46

←Stacey Hammock-Hodges

Leave without pay???

09:52

←Stephanie Moore



Idk how leave works. You'll have to call and talk to Dana in HR at extension 1540

10:07

←Stacey Hammock-Hodges

OK...thanks Stacey

10:07

←Stephanie Moore



No prob

10:07

←Stacey Hammock-Hodges

 Enter message     SEND

C-1-A2

Screenshot_2016-01-14-22-37-19.png



## Stacey Hammock
(912) 601-7486

Mon, 12/14/2015



Hey Stephanie. I spoke with Dana in HR and she said that you applied for FMLA and you were denied due to not having been with us for a year and that you applied for intermittent leave and you were denied for that as well. She said your next option was to request a personal leave of absence, but that your job wouldn't necessarily be protected in that case

13:54

←Stacey Hammock-Hodges

But as of today I have been there a year and Fmla rep told me differently today when I spoke to them...my start date was or hire date was December 14

13:57

←Stephanie Moore

and I wanted to start in Jan and surely by then I will have surpassed a year

13:59

←Stephanie Moore

I'm just relaying info. You'll need to get in touch with Dana in HR. Her

←Stacey Hammock-Hodges



Enter message

SEND

C-4-04



Stacey Hammock
(912) 601-7486

Mon, 12/14/2015

Hey Stephanie. I spoke with Dana in HR and she said that you applied for FMLA and you were denied due to not having been with us for a year and that you applied for intermittent leave and you were denied for that as well. She said your next option was to request a personal leave of absence, but that your job wouldn't necessarily be protected in that case

13:54

←Stacey Hammock-Hodges

But as of today I have been there a year and Fmla rep told me differently today when I spoke to them...my start date was or hire date was December 14

13:57

←Stephanie Moore

and I wanted to start in Jan and surely by then I will have surpassed a year

13:59

←Stephanie Moore

I'm just relaying info. You'll need to get in touch with Dana in HR. Her

←Stacey Hammock-Hodges

Enter message

SEND

C-4-D5
1/1

# AUGUSTA OBSTETRICS & GYNECOLOGY SPECIALISTS, LLC

Indrani R. Bongu, M.D.
Bipin Chudgar, M.D.
Rafael E. Jordan, M.D.

Kathryn A. Knodel, M.D.
Rodman Lemon, M.D.
Cristian M. Thomae, M.D.

Radhika K. Subramanian, M.D.
Russell D. Swanger, D.O.
Maria C. Thomae, N.P.

## PREGNANCY WORK GUIDELINES

Date: 12/24/15

RE: Stephanie Moore

To whom it may concern:

Stephanie Moore _____ is pregnant with an expected due
date of 2/11/16 _____. She should not be subjected to
prolonged periods of standing, heavy lifting greater than 20 pounds,
exposure to hazardous or noxious fumes, or extremes of temperature during
the course of her pregnancy. Due to pregnancy patient
is restricted to 8 hour
workdays. Any question
please call office.
thanks

Sincerely,

Revised 3/15/10

**Augusta Office**
2806 Hillcreek Drive • Augusta, GA 30909
(706) 863-0200
Fax: (706) 863-4695 • Fax: (706) 860-5624    www.AugustaOBGYN.com

**Evans Office**
425 N. Belair Road • Evans, GA 30809
(706) 855-6244
Fax: (706) 364-1525

C-2-B1

12/20/15



## Stacey Hammock
### (912) 601-7486



Stephanie-I saw your Pregnancy Work Guidelines and spoke with Mike Black about it. We cannot accommodate 8 hour shifts since the position is 12 hour shifts. You will have to go ahead and apply for FMLA. you can call HR if you have any other questions.

10:54

←Stacey Hammock-Hodges

I go ahead and turn my papers in...thnxs..

10:56

←Stephanie Moore



Ok thanks. I also need to know when to take you off of the schedule

10:56

←Stacey Hammock-Hodges

OK..

10:56

←Stacey Hammock-Hodges

My intermittent leave has leave has been approved so fmla says if I have to miss a day, it will be covered.. I got get approval for my continuous though so I can be gone by the the 15th of Jan

←Stephanie Moore

Enter message

SEND

C-2- B2 1/1



Stacey Hammock
(912) 601-7486

days
14:04

So will my job still be there or no?   ←Stephanie Moore
14:08



If you feel like you can work 12 hour shifts, you need a doctors note saying so. You're job isn't in jeopardy, I just have to get my shifts covered. So I need a doctors excuse saying you can work 12 hour shifts until you can go out on continuous FMLA
15:58

←Stacey Hammock-Hodges

OK..   ←Stephanie Moore
15:59



Thank you. I can't pay you time for your call-in on 1-11 since it was a late call-in
16:00

←Stacey Hammock-Hodges

OK...   ←Stephanie Moore
16:00

 Enter message                SEND

C-2-B3
1/1



**Stacey Hammock**
(912) 601-7486

Even with the doctor's excuse ? I don't understand that...

16:02

←Stephanie Moore



Yes ma'am. That's policy. I've given you copies of the policy.

16:02

←Stacey Hammock-Hodges

I notified the supervisor....but I am pregnant and I can't work in pain...ibut okay,  that's fine

16:03

←Stephanie Moore



Ok. I don't make the rules. Just enforce them.

16:05

←Stacey Hammock-Hodges

that's fine then...well my health and baby is of utmost importance. So it is what it is...

16:07

←Stephanie Moore



I understand.

16:16

←Stacey Hammock-Hodges

 Enter message

SEND

C-2-B4

1/1



## Stacey Hammock
### (912) 601-7486

Call in time has always been 3 pm for night shift. That's not changing. And if you call in after that, it'll be a late call-in.

15:03

←Stacey Hammock-Hodges

OK..

15:09

←Stephanie Moore

---

Wed, 01/13/2016

---

Stephanie-Did you get a note from your doctor on Monday saying it was okay to do 12 hour shifts?

13:38

←Stacey Hammock-Hodges

I am waiting on approval for my continuous fmla... so if they approve this will be my final week

13:48

←Stephanie Moore

I'll have to take you off of the schedule immediately then if you don't have a note to work 12 hour shifts.

←Stacey Hammock-Hodges

 Enter message     SEND

C-3-C1

# FMLASource®

455 N. Cityfront Plaza Drive, 13th Floor
Chicago, IL 60611-5322
Phone: 855-CHS-FMLA
Fax: 877-309-0218

http://fmla.sunlife-usa.com

Attn: CHSPSC, LLC (East Georgia Regional Medical Center)

Leave Request # 1294709

3/3/2016

Stephanie Moore
623 Clark Place Rd
Waynesboro, GA  30830

Dear Stephanie,

This letter confirms decisions made regarding your recent request(s) for leave from your position at East Georgia Regional Medical Center for incapacitation due to pregnancy or childbirth.

| On Intermittent Leave | Beginning on  12/9/15 | Ending on 12/17/15 |
|---|---|---|
| Decision = Denied | Decision Reason = Ineligible - Length of Employment | |
| Applicable Leave Plan(s): FMLA | | |

| On Intermittent Leave | Beginning on  12/18/15 | Ending on 12/23/15 |
|---|---|---|
| Decision = Approved | Decision Reason = | |
| Estimated frequency of absence: On an intermittent basis | | |
| Applicable Leave Plan(s): FMLA | | |

| On Intermittent Leave | Beginning on  12/24/15 | Ending on 2/ 4/16 |
|---|---|---|
| Decision = Approved | Decision Reason = | |
| Estimated frequency of absence: On an intermittent basis for up to 2 episodic incapacitation(s) per month lasting up to 1 day(s) per episode | | |
| Applicable Leave Plan(s): FMLA | | |

| On Continuous Leave | Beginning on  1/13/16 | Ending on 1/20/16 |
|---|---|---|
| Decision = Denied | Decision Reason = Documentation for Leave not Received | |
| [Revised Start Date] Based on the time currently reported to FMLASource, if the requested dates are certified by an appropriate medical provider, FMLA entitlement will exhaust after 04/03/2016. | | |
| Applicable Leave Plan(s): FMLA | | |

| On Continuous Leave | Beginning on  1/21/16 | Ending on 3/17/16 |
|---|---|---|
| Decision = Approved | Decision Reason = | |

C-4-01

| Estimated frequency of absence: On a continuous basis |
| --- |
| [Revised End Date] |
| Applicable Leave Plan(s): FMLA |

| On Continuous Leave | Beginning on  3/18/16 | Ending on 4/10/16 |
| --- | --- | --- |
| Decision = Approved | Decision Reason = | |
| Estimated frequency of absence: On a continuous basis | | |
| [Revised Dates] FMLA Entitlement will exhaust after use on 04/10/2016. | | |
| Applicable Leave Plan(s): FMLA | | |

**Frequency of Absence for Intermittent Leave**

Your intermittent leave is approved for standard prenatal appointments monthly until 28 weeks, biweekly until 36 weeks, then weekly until birth. If you are taking intermittent leave for episodes of incapacity or a non-standard treatment schedule, a duration and frequency of absence will be listed underneath the intermittent leave dates.

## What You Need To Know

With the continuous and/or reduced leave(s) approved above, we are anticipating the following amount of FMLA entitlement will be used: 432.00 hours or 12.00 weeks

The Family and  Medical Leave Act (FMLA) allows eligible employees up to a total of 12 weeks of unpaid leave in a 12-month period for certain qualifying reasons.  If your leave is approved and you have FMLA time available, you will be entitled to job protection under the FMLA for the dates listed above (see "beginning on" and "ending on") and your time off work will reduce your available FMLA balance. Your employer will maintain your health benefits under the same conditions as if you continued to work.  If you do not return to work following FMLA for a reason other than (1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA; or (2) other circumstances beyond your control, you may be required to reimburse your employer for their share of health insurance premiums paid on your behalf.

If your leave is supplemented by a pay replacement benefit (for example short-term disability, worker's compensation and/or paid time off) that benefit will run concurrently with your leave.

## What You Need To Do

**Provide a fitness-for-duty certification upon your return from continuous or reduced schedule leave for your own health condition.** In order to be restored to your job, you must present to your employer certification from your doctor stating that you are fit to return to work.

ACTION REQUIRED:
You must contact FMLASource each time you are absent related to this intermittent leave, in addition to following your normal call off procedures or your leave time will not be counted as FMLA. Failure to comply with calling off to both parties may be sufficient grounds for disciplinary action up to and including termination.

**Notify FMLASource if your leave changes.**
If, for any reason, your condition or status changes significantly, please notify FMLASource immediately.

C-4-D2

Should you have any questions, please contact FMLASource by sending an email to FMLACenter@FMLASource.com or call us toll free at 855-CHS-FMLA. Please reference your leave request number # 1294709 when you contact us. You may also find information and review your leave status on our website at http://fmla.sunlife-usa.com. To access your record, please visit our website and create a username and password. You must have your employee ID number and the postal code (30830) on file with your employer to register. We are working to provide you with excellent service during your leave.


Best Regards,

FMLASource

cc: Stacey Hodges, 650502 - Mgr Nursing Svcs

C-4-D3

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Stephanie D. Moore
623 Clarkplace Road
Waynesboro, GA 30830

From: Savannah Local Office
7391 Hodgson Memorial Drive
Suite 200
Savannah, GA 31406

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2016-10320 | C A. Harris, Investigator | (912) 920-4276 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____

**Omayra Padilla,**
**Director**

MAY 19 2017

(Date Mailed)

Enclosures(s)

cc: **Mike Black**
**Human Resources Director**
**EAST GEORGIA REGIONAL MEDICAL CENTER**
**1499 Fair Road**
**Statesboro, GA 30458**

C-5-81



PLEASE RESPOND TO WRITER AT:

Direct Dial: (615) 465-7252
Fax: (615) 465-3012
E-mail: Peter_Malanchuk@chs.net

June 1, 2016

**VIA FACSIMILE ONLY: (912)920-4484**

Ms. Holly H Aguilar
Director
U.S. Equal Employment Opportunity Commission
Savannah Local Office
7391 Hodgson Memorial Drive, Suite 200
Savannah, GA 31406

COMMUNITY

HEALTH

SYSTEMS

4000 Meridian Boulevard

Franklin, TN 37067

Tel: (615) 465-7000

P.O. Box 689020

Franklin, TN 37068-9020

Re:   Charge No.: 846-2016-10320
Charging Party: Stephanie D. Moore

Dear Ms. Aguilar:

This is a response by East Georgia Regional Medical Center, LLC, d/b/a East Georgia Regional Medical Center (the "Medical Center") in the above referenced Charge. I am legal counsel for the Medical Center and your contact for this matter. The Medical Center employs over 700 employees and is an equal employment opportunity employer.

Charging Party

Charging Party was employed at the Medical Center as a certified nursing assistant "CNA"). She was responsible for performing clinical patient care duties, comfort measures, and general hygiene as assigned by the supervising registered nurse; recording information in patient medical records and reports; preparing and disassembling patient rooms for admission and discharge; and interacting regularly with patients and their family.

Charging Party Resigned

On March 27, 2016, Charging Party *resigned*. Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish a prima facie case of sex discrimination, Charging Party must show that (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified; and (4) she was treated worse than a similarly situated male employee. Focusing on the second mandatory element, Charging Party was not subject to an adverse employment action. She *resigned*. Therefore, the Charge is not actionable.

"Community Health Systems" is a registered trade name of CHSPSC, LLC.



Medical Center Granted Charging Party's Request To Maintain Schedule

The Medical Center received a physician's note from Charging Party on December 28, 2015.[1]  When the Medical Center reviewed the note with Charging Party, she stated she wanted to continue working her regularly scheduled twelve hour shifts and that she would provide a second physician's note stating as much.  In an effort to work with her, the Medical Center agreed.  As reflected by the attached time records, Charging Party only worked six shifts over a two week period before applying for and receiving continuous FMLA leave.[2]  She never provided the Medical Center the second physician's note before going out on her leave.  Charging Party *resigned* on March 27, 2016, while on leave.

Conclusion

Charging Party claims she was discriminated against because of her sex. This is not true.  Charging Party requested and was allowed to continue working her regularly scheduled shifts.  Moreover, Charging Party *resigned* while out on her approved FMLA leave.

I trust that the facts outlined above resolve this matter.  If not, please contact me if you have any questions.

Sincerely,

Peter A. Malanchuk
Employment Counsel

Attachments

---

[1] Charging Party states in her Charge she requested accommodations on November 16, 2015, but the Medical Center did not receive her physician's note until December 28, 2015.
[2] Her FMLA leave began January 16, 2016, and was to end April 10, 2016.

(C-6-A2)